IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. JANE DOE and JANE ROE | § § § | |
| | § | CIVIL NO. 2:15-cv-208 |
| Plaintiffs, | § § | |
| v. | § § | Judge Nelva Gonzales Ramos |
| RODNEY YSA MESQUIAS, and<br>HENRY WAYNE MCINNIS | § § § | JURY TRIAL DEMANDED |
| Defendants. | § § | |

**UNITED STATES OF AMERICA'S COMPLAINT
IN PARTIAL INTERVENTION**

Plaintiff, the United States of America ("United States"), on behalf of the United States Department of Health and Human Services ("HHS") and the Centers for Medicare & Medicaid Services ("CMS"), partially intervenes in this action and brings claims against Rodney Ysa Mesquias ("Mesquias") and Henry McInnis ("McInnis") (hereinafter "Defendants"), to recover treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*., as well as damages under the common law and equitable theories of fraud and payment by mistake. Having filed a notice of intervention pursuant to 31 U.S.C. § 3730(b)(4), the United States alleges as follows:

**INTRODUCTION**

1.     A qui tam Complaint was filed under seal on May 8, 2015, in the Corpus Christi Division of the Southern District of Texas. (TXSD Case 2:15-cv-00208, Doc. 1). The Complaint alleged Defendants Mesquias, Merida Health Care Group, Inc., ("Merida"), and Illumina LLC ("Illumina"), violated the FCA and the Anti-Kickback Statute, 42 U.S.C. §1320a-7b. Mesquias

1

was the owner and operator of Merida and Illumina. Merida had multiple hospice and home health entities in Texas, including Bee Caring Hospice Health Care, Inc., and BRM Home Health PLLC in Harlingen; Illumina, and Virtue Home Health, Inc. in Corpus Christi; Professional Hospice Care, Inc. in Laredo; Merida Health Care Group of San Antonio LLC, and Bee Caring Hospice LLC in San Antonio; and Well-Care Home Health, Inc. in Houston. The Merida corporate office was in Harlingen, Cameron County, Texas, within the Southern District of Texas.

2. The Complaint alleged that Mesquias, Merida, and Illumina defrauded Medicare by knowingly submitting claims to Medicare for hospice services for ineligible patients. Specifically, the Complaint alleged that Mesquias, Merida, and Illumina falsely certified patients as eligible for Medicare hospice services, falsified documents to support the admission, certification, and recertification of ineligible hospice patients, and bribed patients to elect hospice benefits. The Complaint triggered a criminal investigation and the civil qui tam case has remained under seal pending resolution of the criminal case. (TXSD Case 2:15-cv-00208, Doc. 20).

3. On January 09, 2018, a criminal indictment was filed in the Brownsville Division of the Southern District of Texas. (TXSD Case 1:18-cr-00008, Doc. 1). The indictment charged Mesquias, McInnis (the Merida administrator), Dr. Francisco Pena (one of Merida's medical directors), and registered nurse Jose Garza ("RN Garza"), with *inter alia,* conspiring to commit health care fraud, health care fraud, and conspiring to pay and receive health care kickbacks. *Id.* A superseding indictment filed on October 16, 2018, added charges against Dr. Jesus Virlar (another Merida medical director). (TXSD Case 1:18-cr-00008, Doc. 119). The criminal indictments arose from the same facts, transactions, and series of transactions identified in the qui tam Complaint. The superseding indictment alleged that through Merida, Mesquias, McInnis, RN Garza, Dr. Pena, and Dr. Virlar conspired to commit health care fraud, and knowingly submitted false and

2

fraudulent claims to Medicare for medically unnecessary services and services that did not comply with Medicare reimbursement requirements. (TXSD Case 1:18-cr-00008, Doc. 119). The superseding indictment alleged that Mesquias, McInnis, and RN Garza paid kickbacks and bribes to Merida medical directors, including Dr. Pena and Dr. Virlar in exchange for patient referrals and falsely certifying Medicare patients as eligible for hospice and home health services. *Id.* The superseding indictment also alleged that Mesquias, McInnis, RN Garza, Dr. Pena, and Dr. Virlar knowingly concealed and attempted to conceal false and fraudulent Medicare claims by falsifying patient records. *Id.* The superseding indictment alleged that Medicare paid Merida approximately $120,000,000 for false and fraudulent claims from 2009 through to 2018. *Id.*

4. On November 6, 2019, a federal jury convicted Defendants of the charges in the superseding indictment (hereinafter "criminal trial"). (TXSD Case 1:18-cr-00008, Doc. 369). Final judgment under the superseding indictment was rendered in favor of the United States against both Defendants. (TXSD Case 1:18-cr-00008, Docs. 519 and 569). The Fifth Circuit Court of Appeals affirmed Defendants' criminal convictions and sentences on March 24, 2022. (CA5 Case 20-40869, Doc. 00516252163).

5. The United States brings this civil action against Defendants under the FCA to recover losses sustained by Medicare. Defendants are estopped from denying the essential elements of the United States allegations because final judgment has been rendered against Defendants in favor of the United States in the criminal case arising from the same facts, transactions, and series of transactions underlying their criminal convictions. 31 U.S.C. § 3731(e).

6. The United States seeks to recover treble damages and civil monetary penalties under the FCA, and in the alternative to recover damages under the theories of common law fraud and payment by mistake.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this action because Plaintiff is the United States, and the allegations arise under the FCA. 28 U.S.C. §§ 1331, 1345.

8. The Court has supplemental jurisdiction over the common law fraud and payment by mistake claims because they are related to the FCA claims. 28 U.S.C. § 1367(a).

9. The Court has personal jurisdiction over the Defendants because (1) the United States filed this action under 31 U.S.C. § 3730(a); (2) the Defendants resided and transacted business in this judicial district at the time of the events; and (3) acts proscribed by the FCA occurred in the Southern District of Texas. 31 U.S.C. § 3732(a).

10. Venue is proper in this judicial district because a substantial part of the events giving rise to the claims occurred in the Southern District of Texas. 28 U.S.C. § 1391(b)(2).

## PARTIES

11. Plaintiff is the United States suing on its own behalf, and on behalf of HHS and CMS.

12. Relators are former Merida employees who filed a qui tam complaint pursuant to 31 U.S.C. § 3730(b) on May 8, 2015.

13. Defendant Mesquias owned and operated Merida, and held the titles of President, Chief Executive Officer, and Managing Member. During the events relevant to this Complaint, Mesquias was a resident of Cameron County in the Southern District of Texas, and later a resident of Bexar County in the Western District of Texas.

14. Defendant McInnis was the Merida Administrator. McInnis oversaw day-to-day Merida operations. During the events relevant to this Complaint, McInnis was a resident of Cameron County in the Southern District of Texas.

## THE MEDICARE PROGRAM

15. Medicare is a federal health insurance program for persons 65 and older, persons under 65 with certain disabilities, and people of all ages with end-stage renal disease. HHS funds the Medicare program and CMS administers the program. In general, Medicare is not permitted to pay for any expenses incurred for items or services that are not "reasonable and necessary for the diagnosis and treatment of illness or injury;" and in the case of hospice benefits, Medicare may only pay for items and services that are "reasonable and necessary for the palliation or management of terminal illness." 42 U.S.C. §§ 1395(y)(a)(1)(A), (a)(1)(C).

16. To receive Medicare reimbursement payments health care providers must enroll with Medicare and agree to abide by express Medicare terms and conditions. Medicare enrollment agreements contain a statement that payment from Medicare is conditioned upon each claim and the underlying transaction for that claim complying with Medicare laws, regulations, and program instructions, including but not limited to the Federal Anti-kickback Statute ("AKS"). Each Medicare enrollment agreement requires the applicant to agree to "not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare," and to "not submit claims with deliberate ignorance or reckless disregard of their truth or falsity." To submit electronic claims to Medicare, health care providers must submit an Electronic Data Interchange ("EDI") agreement. Each EDI agreement requires the applicant to agree to "submit claims that are accurate, complete, and truthful," and to acknowledge that claims are paid from Federal funds under the Medicare program, and that anyone who misrepresents or falsifies or causes to be misrepresented or falsified any record or other information related to a claim for payment may be fined and/or imprisoned under applicable federal law.

17. Medicare covers the cost of reasonable and necessary hospice services. 42 U.S.C. § 1395d(a)(a), 42 C.F.R. § 418.200. Medicare beneficiaries must elect to receive hospice care, acknowledge that hospice services are palliative rather than curative, and waive Medicare benefits for services such as treatment of the terminal condition. 42 C.F.R. § 418.24. As a condition of Medicare payment, Medicare beneficiaries must be certified as terminally ill. 42 U.S.C. § 1395f(a)(7); 42 C.F.R. §§ 418.200, 418.20, 418.22. Medicare defines a terminal illness as one having a medical prognosis with a life expectancy of 6 months or less if the illness were to run its normal course. 42 U.S.C. § 1395x(dd)(3)(A); 42 C.F.R. § 418.3. Medicare requires terminal illness certifications to be based on the clinical judgement of the patient's attending physician, hospice medical director, or a physician member of the hospice interdisciplinary group, and to include a narrative explaining the physician's clinical findings that accurately reflects each patient's individual circumstances. 42 U.S.C. §1395f(a)(7); 42 C.F.R. § 418.22(b), (c). As of January 1, 2011, Medicare also required a hospice physician or hospice nurse practitioner to have a face-to-face encounter visit with any hospice patient whose total hospice stay was anticipated to reach the third benefit period, and then every benefit period thereafter, to gather clinical findings necessary to determine continued eligibility for hospice care. 42 C.F.R. § 418.22(a)(4).

18. Medicare covers the cost of reasonable and necessary home health services when all applicable requirements for the home health benefit are satisfied, including a face-to-face patient encounter and certification by a physician or authorized non-physician providers. 42 C.F.R. § 424.22. The certification of medical necessity is a condition of payment for Medicare home health benefits.

# THE LAW

### A. The False Claims Act

19. The FCA is the United States primary litigation tool for recovering losses resulting from fraud. *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 267 (5th Cir. 2010). The FCA holds individuals personally liable for FCA violations, and states any person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim, or (C) conspires to violate the FCA, is liable to the United States for a civil monetary penalty plus 3 times the amount of the damages sustained by the government. 31 U.S.C. §§ 3729(a)(1)(A)-(C).

20. Under the FCA, the term "knowingly" means a person has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A). The term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. 31 U.S.C. § 3729(b)(4). The FCA does not require proof of a specific intent to defraud. 31 U.S.C. § 3729(b)(1)(B).

### B. The Anti-Kickback Statute

21. The AKS prohibits the knowing and willful offer or payment of any remuneration (including a kickback or bribe) to any person to induce that person to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service paid for under a Federal health care program. 42 U.S.C. § 1320a-7b(b)(2). Courts have consistently held that the AKS is violated if "one purpose" of a transaction with a potential referring party is to induce referrals. *See United States v. Davis*, 132 F.3d 1092 (5th Cir. 1998).

22. A Medicare claim where the items or services resulted from a violation of the AKS constitutes a false or fraudulent claim under the FCA. 42 U.S.C. § 1320a-7b(g). A person need not have actual knowledge of the AKS or specific intent to violate the AKS to commit a violation of the AKS. 42 U.S.C. § 1320a-7b(h).

C. **The Estoppel Effect of Criminal Convictions**

23. The FCA explicitly contemplates, and double jeopardy does not prohibit, the United States from pursuing both criminal and civil remedies based upon the same facts. *See, e.g.*, 31 U.S.C. §§ 3731(e), 3730(c)(4). A final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, including upon a verdict after trial, shall estop a defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and brought under the FCA. 31 U.S.C. § 3731(e).

24. To convict the Defendants of health care fraud in violation of 18 U.S.C. § 1347, the United States proved beyond a reasonable doubt in the criminal trial that each Defendant knowingly and willfully executed, or attempted to execute a scheme or artifice to defraud a health care benefit program, or to obtain by means of false or fraudulent pretenses, representations, or promises, money owned by, or under the custody of, a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services. *See e.g., United States v. Imo,* 739 F.3d 226, 235-36 (5th Cir. 2014). To convict the Defendants of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, the United States proved beyond a reasonable doubt in the criminal trial that (1) two or more persons made an agreement to commit health care fraud, (2) each Defendant knew the unlawful purpose of the agreement, and (3) each Defendant

joined in the agreement willfully, with intent to further the unlawful purpose. *See e.g., United States v. Grant,* 683 F.3d 639, 643 (5th Cir. 2012).

25. FCA Damages may be established from the determination of total loss sustained by a victim and ordered as restitution pursuant to 18 U.S.C. § 3664 by a court sentencing in a criminal proceeding related to the same transaction. *See United States v. ex rel. Bachman v. Healthcare Liaison Professionals, Inc.,* 395 F.Supp.3d 785, 789-790 (N.D. Tex. 2019)(discussing the use of criminal restitution to determine FCA damages).

## FACTUAL ALLEGATIONS

26. The FCA allegations in this Compliant arise from the same facts, transactions, and series of transactions underlying the Defendants' criminal convictions and first alleged in the qui tam Complaint. Under the FCA Defendants are estopped from denying the essential elements of the United States FCA allegations and the common law allegations of fraud and payment by mistake because these allegations arise from the same facts, transactions, and series of transactions underlying the Defendants' criminal convictions which were affirmed by the Fifth Circuit Court of Appeals.

27. Specifically, the United States alleges that from January 1, 2009 through to July 1, 2018, Defendants conspired together and with others to violate the FCA by (1) knowingly presenting and causing to be presented false and fraudulent claims for payment to Medicare for hospice and home health services that were medically unnecessary and tainted by illegal kickbacks; and (2) knowingly making, using, and causing to be made and used, false records and statements material to false and fraudulent Medicare claims, all in violation of 31 U.S.C. § 3729(a)(1)(A)-(C).

28. Mesquias enrolled Merida entities in Medicare to receive payments for hospice and home health services provided to Medicare beneficiaries. As part of the enrollment process Mesquias signed Medicare enrollment agreements that included a certification agreeing to abide by the Medicare laws, regulations, and program instructions, and an acknowledgment that he understood that Medicare payments were conditioned upon following laws, regulations, and program instructions, including specifically the AKS.

29. As part of the Medicare enrollment process McInnis signed Medicare EDI Agreements for Merida entities that included his agreement that Merida would only submit claims that were accurate, complete, and truthful, and an acknowledgment that misrepresentation or falsification of any record or other information related to a claim for payment from Federal funds could result in a fine or imprisonment.

30. In violation of the AKS and the FCA Defendants knowingly and willfully paid illegal kickbacks to Merida medical directors for the referral of patients to Merida for the purpose of submitting claims to Medicare for payment. Defendants paid the illegal kickbacks in cash, with checks from Merida bank accounts, and with items such as trips and sporting tickets.

31. In return for patient referrals and to induce further patient referrals for hospice and home health services, Mesquias took Merida medical director Dr. Virlar on trips to Las Vegas, Napa, and San Francisco, gave Dr. Virlar tickets to sporting events, and gave Dr. Virlar open access to a Porsche and condominium.

32. To facilitate increased patient referrals for hospice and home health services, Defendants requested Merida medical director Dr. Carrillo relocate his medical practice and financed the relocation costs.

33. The following checks are examples of the illegal kickback payments made to Merida medical directors Dr. Eduardo Carrillo and Dr. Jesus Virlar.[1]

 

34. In furtherance of the conspiracy to violate the FCA, Defendants established a marketing plan that required Merida employees, including medical directors, nurses, and marketers to lie to patients about Medicare requirements for home health and hospice benefits. Specifically, Defendants directed employees to tell Medicare patients they were qualified for home health services when they were not, and to tell the patients that they did not have to be terminally ill or dying to sign up for hospice services.

35. In furtherance of the conspiracy to violate the FCA, Defendants instructed Merida employees to offer patients free nutritional supplements, incontinence supplies, durable medical equipment, and medications for electing to receive hospice benefits from Merida. Defendants also instructed Merida employees to entice patients to continue receiving Merida hospice benefits by threating to withdrawal free supplies if Merida services were discontinued.

36. In furtherance of the conspiracy to violate the FCA, Defendants told Merida employees to admit every patient referred to Merida for hospice services regardless of medical condition. Defendants terminated employees who refused to admit ineligible patients to Merida for hospice services, or who wanted to discharge ineligible patients from hospice services.

---

[1] Checks have the original criminal case exhibit numbers on them.

37. In furtherance of the conspiracy to violate the FCA, Defendants required Merida medical directors and other employees to create false patient records to support Merida's false and fraudulent Medicare claims. At the direction of Defendants, Merida medical directors and employees created false patient evaluations, false face-to-face encounter records, and false certifications for hospice and home health services. The Defendants directed the creation of these false and fraudulent patient records because they knew the records were material to the payment of claims by Medicare.

38. Between January 1, 2009, and July 1, 2018, through Merida, Defendants submitted $152,731,019 in false and fraudulent claims to Medicare and received a total of $124,213,350 in payment for those false and fraudulent claims.

39. Defendants received at least $9,875,803 from Medicare for claims submitted under the Medicare provider numbers of Merida medical directors Dr. Carrillo and Dr. Virlar. The following chart is a representative sample of claims for six patients falsely certified as terminally ill by Dr. Virlar and Dr. Carrillo at the Defendants' direction.

|  | **Basis of False Claim included:** | **Total Billed** | **Total Medicare Paid** |
|---|---|---|---|
| Jack H. | Not terminally ill, false medical records | $286,149.00 | $198,031.00 |
| Francisca P. | Not terminally ill, false medical records | $196,582.00 | $134,180.00 |
| Teresa C. | Not terminally ill, false medical records | $203,012.00 | $154,330.00 |
| Arcadio C. | Not terminally ill, false medical records | $142,525.00 | $116,087.00 |
| Petra C. | Not terminally ill, false medical records | $275,558.00 | $225,623.00 |
| Joann C. | Not terminally ill, false medical records | $94,576.00 | $53,833.00 |
|  | Totals: | $1,198,402.00 | $882,084.00 |

40. At the criminal sentencing of Mesquias, U.S. District Judge Rolando Olvera found that Medicare had sustained a loss of $120,000,000 due to the false and fraudulent claims submitted by Merida, and he ordered Mesquias to pay Medicare $120,000,000 in restitution. (TXSD Case 1:18-cr-00008, Docs. 519).

**FIRST CAUSE OF ACTION**
**Presentation of False or Fraudulent Claims in Violation of the FCA**
**31 U.S.C. 3729(a)(1)(A)**

41. The United States incorporates by reference paragraphs 1 – 40 of this Complaint in Intervention as if fully set forth herein.

42. Each Defendant violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and causing to be presented false and fraudulent claims for payment to Medicare for medically unnecessary hospice and home health services and claims that were tainted by illegal kickbacks.

43. By paying the Defendants' false and fraudulent Medicare claims the United States has incurred damages in an amount to be determined by trial or by the Court. Medicare would not have paid Merida for hospice and home health claims if it had known that the claims were for services were not medically necessary and for services tainted by illegal kickbacks. Defendants are jointly and severally liable to the United States under the FCA for civil monetary penalties and three times the single damages sustained by the United States.

**SECOND CAUSE OF ACTION**
**Making or Using False Records or Statements in Violation of the FCA**
**31 U.S.C. § 3729(a)(1)(B)**

44. The United States incorporates by reference paragraphs 1 – 40 of this Complaint in Intervention as if fully set forth herein.

45. Each Defendant violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making, using, and causing to be made and used, false records and statements material to false and fraudulent Medicare claims. Specifically, each defendant knowingly directed and sanctioned the creation of false and fraudulent patient medical records, including patient evaluations, face-to-face encounters and the certifications of terminal illness and medical necessity required by Medicare as a condition of payment for hospice and home health services.

46. By paying the Defendants' Medicare claims that were based upon false and fraudulent records and material statements, the United States has incurred damages in an amount to be determined by trial or by the Court. Medicare would not have paid Merida for hospice and home health claims if it had known the claims were for services were not medically necessary and for claims based on medical records that were fabricated to meet Medicare payment requirements. Defendants are jointly and severally liable to the United States under the FCA for civil monetary penalties and three times the single damages sustained by the United States.

### THIRD CAUSE OF ACTION
### Conspiracy to violate the False Claims Act
### 31 U.S.C. 3729(a)(1)(C)

47. The United States incorporates by reference paragraphs 1 – 40 of this Complaint in Intervention as if fully set forth herein.

48. Defendants violated 31 U.S.C. § 3729(a)(1)(C) by conspiring with each other and Merida employees including medical directors, to knowingly present and cause to be presented false and fraudulent claims for payment to Medicare, and to knowingly make, use, and cause to be made and used false records and statements material to false and fraudulent Medicare claims. In furtherance of the conspiracy the following acts, among others, occurred, (1) Defendants paid kickbacks to medical directors for the referral of Medicare patients to Merida for the purpose of submitting claims for payment to Medicare, (2) Merida medical directors, including Dr. Virlar and Dr. Carrillo, accepted illegal kickbacks for the referral of Medicare patients to Merida, (3) Defendants directed the creation of false and fraudulent medical records including Medicare terminal illness and medical necessity certifications for hospice and home health services, (4) Merida medical directors, including Dr. Virlar and Dr. Carrillo knowingly certified patients were terminally ill when the patients were not terminally ill, (5) Merida medical directors, including Dr.

Virlar and Dr. Carrillo knowingly certified patients needed hospice and home health services when the patients did not need these services, (6) Merida employees lied to Medicare patients about eligibility criteria for hospice and home health benefits, (7) Merida employees induced Medicare beneficiaries to elect Medicare hospice benefits from Merida with free nutritional supplements, incontinence supplies, durable medical equipment, and medications, (8) Medicare beneficiaries were threatened with the loss of free items offered in inducement if they withdrew from Merida, and (9) Merida employees were terminated for refusing to facilitate and further the fraud.

49. By the acts taken in furtherance of the conspiracy, the United States has incurred damages in an amount to be determined by trial or by the Court. Medicare would not have paid Merida for hospice and home health claims if it had known the claims were not for medically necessary hospice and home health services, that the claims were tainted by illegal kickbacks, and that the claims were based upon patient medical records that were fabricated to meet Medicare payment requirements. Defendants are jointly and severally liable to the United States under the FCA for civil monetary penalties and three times the single damages sustained by the United States.

**FOURTH CAUSE OF ACTION**
**Common Law Fraud**

50. The United States incorporates by reference paragraphs 1 – 40 of this Complaint in Intervention as if fully set forth herein.

51. The United States asserts a claim under the doctrine of common-law fraud, based on materially false representations made by Defendants to Medicare with the intent that Medicare act in reliance on the false representations. Specifically, the Defendants knowingly presented and caused to be presented to Medicare false and fraudulent claims for medically unnecessary services, and services tainted by illegal kickbacks, despite making agreements and representations during

15

the Medicare enrollment process that false and fraudulent claims would not be submitted.

52. The United States relied on the Defendants' false representations, enrolled Merida in Medicare, and paid Merida for false and fraudulent claims submitted by or at the direction of the Defendants. The United States seeks to recover damages in an amount to be determined by trial or by the Court for Medicare claims that would not have been paid if the Defendants had not misrepresented compliance with the Medicare laws, regulations, and program instructions.

## FIFTH CAUSE OF ACTION
### Payment by Mistake

53. The United States incorporates by reference paragraphs 1 – 40 of this Complaint in Intervention as if fully set forth herein.

54. The United States asserts a claim under the doctrine of payment by mistake, based on an erroneous belief that was material to the decision to pay. Specifically, Medicare erroneously believed that the Defendants' enrollment of Merida in Medicare would result only in the submission of claims for payment for medically necessary services submitted in accordance with the Medicare laws, regulations, and program instructions. If the United States had known that the claims submitted by Defendants through Merida were for medically unnecessary services, and services tainted by illegal kickbacks, Medicare would not have paid the claims.

55. The United States paid the Defendants' Medicare claims by mistake under an erroneous material belief; therefore, the United States is entitled to recover damages in an amount to be determined by trial or by the Court.

## PRAYER

56. Defendants are estopped under FCA, 31 U.S.C. § 3731(e) from denying the essential elements of the charges in this Complaint because the charges arise from the same facts, transactions, and series of transactions underlying the Defendants' criminal convictions for

conspiracy to commit health care fraud, health care fraud, and conspiracy to pay and receive kickbacks.

57. The United States requests that judgment be entered against the Defendants, jointly and severally and in favor of the United States as follows:

a. On Causes of Action One, Two, and Three under the FCA, the maximum amount of civil monetary penalties allowed by law and treble single damages,

a. On Causes of Action Four and Five under the alternative remedies of common law fraud and payment by mistake, the United States seeks the damages incurred by the United States,

b. All costs, expenses, and attorney's fees associated with prosecuting this civil action, as provided by law,

c. Interest on all amounts owed to the United States, and

d. All other relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

The United States demands a trial by jury as to all issues.

Respectfully submitted,
JENNIFER B. LOWERY
United States Attorney

By: */s/ Julie Redlinger*
Julie Redlinger
Assistant United States Attorney
Southern District of Texas
SDTX: 873627, SBN: 24049160
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone: 713-567-9779,  Fax: 713-718-3303
Email: *julie.redlinger@usdoj.gov*

Attorney in Charge for the United States