IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* JANE DOE and JANE ROE<br>    Plaintiffs,<br><br>v.<br><br>HENRY WAYNE MCINNIS<br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL NO. 2:15-CV-208<br><br>Judge Nelva Gonzales Ramos |

**UNITED STATES MOTION FOR SUMMARY JUDGMENT
<u>ON FCA DAMAGES</u>**

                              Respectfully submitted,

                              ALAMDAR S. HAMDANI
                              United States Attorney

                              By:*/s/ Julie Redlinger*
                              Julie Redlinger
                              Assistant United States Attorney
                              SDTX: 873627, SBN: 24049160
                              1000 Louisiana, Suite 2300
                              Houston, Texas 77002
                              Telephone: (713) 567-9779
                              Facsimile: (713) 718-3303
                              Email: julie.redlinger@usdoj.gov

                              *Attorney in charge for the United States*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I.    PROCEDURAL HISTORY ........................................................................................... 1

II.    ISSUE BEFORE THE COURT ..................................................................................... 3

III.    APPLICABLE CASE LAW AND STATUES ............................................................. 3

    Summary Judgment Standard ...................................................................................... 3

    The False Claims Act Damages ................................................................................... 4

IV.    ARGUMENT ................................................................................................................. 6

    The United States is Entitled to Damages as a Matter of Law ..................................... 6

CONCLUSION ........................................................................................................................ 11

CERTIFICATE OF SERVICE ................................................................................................ 12

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................................... 4

*Celotex Corp., v. Catrett,*
  477 U.S. 317 (1986) ............................................................................................................... 4

*Cook Cnty., Ill. v. United States ex rel. Chandler,*
  538 U.S. 119 (2003) ............................................................................................................... 5

*Mortgages, Inc., v. U.S. Dist. Court for Dist. of Nev. (Las Vegas),*
  934 F.2d 209 (9th Cir. 1991) .................................................................................................. 5

*United States ex rel. Bachman v. Healthcare Liaison Pros., Inc.,*
  395 F.Supp.3d 785 (N.D. Tex., 2019) .................................................................................... 6

*United States ex rel. Eastlick, v. Reddy*,
  No. 3:19-cv-00245-E, 2023 WL 1110313 (N.D. Tex. Jan. 20, 2023) ................................. 5, 6

*United States ex rel. Washington v. Morad*,
  No. 15-868, 2017 WL 1250912 (E.D. LA. April 5, 2017) ..................................................... 5

*United States v. Bd. of Educ. of City of Union City,*
  697 F.Supp. 167 (D.N.J. 1988) .............................................................................................. 5

*United States v. Bickel,*
  No. 02-3144, 2006 WL 1120439 (C.D. Ill. Feb. 22, 2006) .................................................... 6

*United States v. Convalescent Trans., Inc.,*
  No. 4:03-cv-32-FL, 2007 WL 2090210 (E.D.N.C. July 19, 2007) ........................................ 6

*United States v. Davis,*
  No. 05-393-EBA, 2008 WL 1735167 (E.D. Ky. April 11, 2008) .......................................... 6

*United States v. Mackby,*
  339 F.3d 1013 (9th Cir. 2003) ................................................................................................ 5

*United States v. Mahmood,*
  No. 6:15-cv-948, 2016 WL 5369562 (E.D. Tex. 2016) ......................................................... 5

*United States v. McInnis,*
  143 S. Ct. 115 (2022) .................................................................................................... 3

*United States v. Mesquias,*
  29 F.4th 276 (5th Cir. 2022) ................................................................................... passim

*United States v. Mesquias*,
  143 S. Ct. 269 (2022) .................................................................................................... 3

*United States v. Szilvagyi,*
  398 F.Supp.2d 842 (E.D. Mich. 2005) ......................................................................... 6

**STATUTES**

18 U.S.C. § 3664 .................................................................................................................. 6

28 U.S.C. § 2461 .................................................................................................................. 4

31 U.S.C. § 3729(a)(1) ................................................................................................... 4, 10

31 U.S.C. §§ 3729 et seq. .................................................................................................... 1

Public Law 101-410 ............................................................................................................ 4

**RULES**

Fed. R. Civ. P. 56(a) ...................................................................................................... 1, 3

**REGULATIONS**

28 C.F.R. §85.3 .................................................................................................................... 5

28 C.F.R. §85.5 .................................................................................................................... 5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
| *ex rel.* JANE DOE and JANE ROE § | | |
| Plaintiffs, § | CIVIL NO. 2:15-CV-208 | |
| § | | |
| v. § | Judge Nelva Gonzales Ramos | |
| § | | |
| HENRY WAYNE MCINNIS § | | |
| Defendant. § | | |
| § | | |

**UNITED STATES MOTION FOR SUMMARY JUDGMENT ON FCA DAMAGES**

Following the Court's Order granting summary judgment to Plaintiff, the United States of America ("United States"), on its False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, causes of action, the United States files this Motion for Summary Judgment on Damages, pursuant to Fed. R. Civ. P. 56(a) seeking treble single damages and civil penalties against Defendant Henry Wayne McInnis ("McInnis"), and states as grounds therefor:

### I.     PROCEDURAL HISTORY

1.     On May 8, 2015, Relators Jane Doe and Jane Roe filed a sealed complaint under the *qui tam* provisions of the FCA. (ECF No. 1).

2.     On November 6, 2019, in a criminal case arising out of the allegations alleged in the relators' qui tam complaint, a federal jury convicted McInnis and co-defendant Rodney Ysa Mesquias ("Mesquias")(collectively "Defendants") of conspiracy to commit health care fraud, health care fraud, conspiracy to commit money laundering, and conspiracy to obstruct justice. (TXSD 1:18-cr-00008, ECF No. 369). The jury also convicted Mesquias of conspiracy to pay and receive kickbacks. *Id.*

3.     On December 16, 2020, United States District Judge Rolando Olvera sentenced Mesquias to 240 months in prison and to pay Medicare $120,000,000 in restitution. (TXSD 1:18-

cr-00008, ECF No. 519). On February 3, 2021, Judge Olvera sentenced McInnis to 180 months in prison and instead of ordering the "approximately 124 million" in restitution sought by the United States, enforced a previous money judgment for $190,000. (TXSD 1:18-cr-00008, ECF No. 569).[1]

4.  On March 24, 2022, the Fifth Circuit Court of Appeals, affirmed Defendants' convictions and sentences. (TXSD 1:18-cr-00008, ECF Nos. 607-610); *United States v. Mesquias,* 29 F.4th 276 (5th Cir. 2022). Importantly, the Fifth Circuit found "Overwhelming evidence established that Mesquias and McInnis committed health care fraud by abusing Medicare's reimburse-first-verify-later system from 2009 to 2018," and that "An estimated 70 to 85 percent of the Merida Group's patients were ineligible for the care they received." *Mesquias,* 29 F.4th at 280. *Id.* The Fifth Circuit noted that the Defendant's health care fraud conspiracy resulted in "over 47,000 claims for over 9000 patients," and that they "billed over $152 million to Medicare and received $124 million" in payments. *Id.* at 281. In affirming Judge Olvera's sentencing loss calculations, the Fifth Circuit described the fraud as "pervasive" and said it "seeped through every nook of their operation." *Id.* at 283. When fraud is pervasive, the burden shifts to Defendants to show legitimate instances of billing, and the Fifth Circuit found that Defendants "identified no legitimate billings to reduce the loss amount." *Id.*

5.  On April 07, 2022, the United States filed a Complaint in Partial Intervention that alleged three FCA causes of action occurring from January 1, 2009, through July 1, 2018, and in the alternative, causes of action under the theories of common law fraud and payment by mistake. (ECF No. 23). The United States Complaint sought treble single damages and the maximum amount of civil penalties permitted by law. *Id.*

---

[1] Exhibit 1: Excerpt McInnis Sentencing Transcript Day 2: TXSD 1:18-cr-00008, ECF No. 572, Pg. 20:1-8, 21:9-25.

6.     On October 3, 2022, the Supreme Court denied the Defendants' petitions for writ of certiorari. *United States v. Mesquias,* 143 S. Ct. 269 (2022), *United States v. McInnis,* 43 S. Ct. 115 (2022).

7.     On October 6, 2022, the Clerk of the Court entered default against Mesquias on the United States Complaint in Partial Intervention. (ECF No. 36). On November 17, 2022, the Court entered an Order for Default Judgment Against Mesquias in favor of the United States for treble FCA damages of $29,627,410, and civil penalties of $83,840,000, for a total of $113,467,410. (ECF No. 39).

8.     On January 18, 2023, the Court granted the United States motion for summary judgment on liability for the three FCA causes of action alleged in the United States Complaint in Partial Intervention. (ECF No. 43).

9.     Having resolved FCA liability in favor of the United States, the United States now moves for summary judgment on damages for its FCA causes of action, seeking the same amount of damages and civil penalties already assessed against McInnis's co-conspirator Mesquias, namely treble single damages of $29,627,410, and civil penalties of $83,840,000, for a total of $113,467,410.

## II.   ISSUE BEFORE THE COURT

10.    The issue before the Court is whether the United States is entitled to summary judgment as a matter of law on FCA damages, and if so, what damages and civil penalties are owed to the United States.

## III.   APPLICABLE CASE LAW AND STATUES

### Summary Judgment Standard

11.    Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party

3

seeking summary judgement has the burden of showing that there is no genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-248 (italics in original). "Factual disputes that are irrelevant or unnecessary" will not prevent summary judgment. *Id.* at 248. A material fact is one that "might affect the outcome of the suit." *Id*. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp., v. Catrett,* 477 U.S. 317, 323 (1986).

12. Summary judgment is an integral part of the Federal Rules designed "to secure the just, speedy and inexpensive determination of every action" upon a proper showing of the lack of a genuine, triable issue of material fact. *Celotex,* 477 U.S. at 327. Summary judgment isolates and disposes of factually unsupported claims and defenses. *Id.* at 323-24. The Judge's function is not to weigh the evidence and determine the truth of the matter, but rather, to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "There is no issue for trial, unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

### The False Claims Act Damages

13. Any person who violates the FCA is liable to the United States for a civil penalty, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461, Public Law 101-410), plus three (3) times the damages sustained by the Government. 31 U.S.C. § 3729(a)(1). "The fact … that Congress provided for treble damages and an automatic civil monetary penalty per false claim shows that Congress believed that making a false claim to the government

is a serious offense." *United States v. Mahmood,* No. 6:15-cv-948, 2016 WL 5369562 *5 (E.D. Tex. 2016)(quoting *United States v. Mackby,* 339 F.3d 1013, 1018 (9th Cir. 2003)). "Case law suggests a penalty for each act in violation" of the FCA is appropriate. *United States ex rel. Eastlick, v. Reddy*, No. 3:19-cv-00245-E, 2023 WL 1110313 at *8 (N.D. Tex. Jan. 20, 2023).

14. For FCA violations that occurred on or before November 2, 2015, the civil penalty range is $5,500 to $11,000 per violation. 28 C.F.R. §85.3. As of January 30, 2023, the minimum civil penalties for violations occurring after November 2, 2015, increased from $12,537 to $13,508 per violation and the maximum civil penalty increased from $25,076 to $27,018 per violation. 28 C.F.R. §85.5. A Court has discretion to determine the appropriate penalty range in each case. *Cook Cnty., Ill. v. United States ex rel. Chandler,* 538 U.S. 119, 132 (2003). To determine the penalty amount, "courts have taken a 'totality of the circumstances' approach, looking at factors such as the seriousness of the misconduct, the knowledge of the defendants, the amount of damages suffered by the United States, and general fairness. *Id.*

15. All defendants who participate in a conspiracy to defraud the government are jointly and severally liable for the total amount of loss suffered by the government and the total amount of civil penalties. *United States ex rel. Washington v. Morad,* No. 15-868, 2017 WL 1250912 at *2 (E.D. LA. April 5, 2017). "Where one or more persons have committed a fraud upon the government in violation of the FCA, each is joint and severally liable for the treble damages and statutory penalty." *Mortgages, Inc., v. U.S. Dist. Court for Dist. of Nev. (Las Vegas),* 934 F.2d 209, 212 (9th Cir. 1991); *United States v. Bd. of Educ. of City of Union City,* 697 F.Supp. 167, 177 (D.N.J. 1988)(finding that conspiracy to violate the FCA results in joint and several liability for *all* of the damages and penalties against each of the defendants").

5

16. A criminal court's sentencing findings of actual loss for the purposes of restitution may be used to establish damages in a subsequent FCA action, because the sentencing court is required by 18 U.S.C. § 3664 to determine the total amount of the victim's loss when ordering restitution. *United States ex rel. Bachman v. Healthcare Liaison Pros., Inc.,* 395 F.Supp.3d 785, 790-91 (N.D. Tex., 2019); *Reddy,* 2023 WL 1110313, at *8 (referencing *United States v. Szilvagyi,* 398 F.Supp.2d 842, 849-50 (E.D. Mich. 2005); *United States v. Davis,* No. 05-393-EBA, 2008 WL 1735167 at *5 (E.D. Ky. April 11, 2008); *United States v. Convalescent Trans., Inc.,* No. 4:03-cv-32-FL, 2007 WL 2090210, at *6 (E.D.N.C. July 19, 2007); *United States v. Bickel,* No. 02-3144, 2006 WL 1120439, at *3-4 (C.D. Ill. Feb. 22, 2006)).

## IV.   ARGUMENT

**The United States is Entitled to Damages as a Matter of Law**

17. The United States is entitled to summary judgment as a matter of law on its FCA damages, a small subset of the $120,000,000 Medicare loss determined by Judge Olvera at Mesquias's sentencing. There is no genuine dispute about the United States entitlement to receive FCA damages following the Court's ruling on FCA liability, and after considering Judge Olvera's loss finding in the criminal case, and the evidence submitted with this motion, there is no genuine dispute about the single FCA damages of $9,875,803, owed to the United States, and the treble damages of $29,627,410 authorized by the FCA, and no evidence from which a jury could find for lesser damages in favor of McInnis.

18. The United States submits the Fifth Circuit affirmation of McInnis's conviction and Judge Olvera's loss findings in support of its claim for treble damages and civil penalties. The Fifth Circuit found overwhelming evidence establishing that Mesquias and McInnis committed health care fraud from 2009 – 2018, and that over $152 million was billed to Medicare for 47,000 claims for over 9,000 patients, resulting in $124 million in payments. *Mesquias,* 29 F.4th at 280-281. The

Fifth Circuit described the health care fraud as "pervasive" and explained that when fraud is pervasive, "the burden shifts to the defendant to show legitimate instances of billing." *Id.* at 283. The Fifth Circuit noted that Defendants, Mesquias and McInnis, "identified no legitimate billings to reduce the loss amount" from the $124 million established at trial and used for sentencing. *Id.* Consequently, there is no genuine dispute that McInnis is responsible for single FCA damages of $9,875,803, and treble damages of $29,627,410.

19. The United States submits the trial testimony of Mr. Michael Petron in support of its claim for treble damages and civil penalties.[2] Mr. Petron testified at McInnis' criminal trial. The United States retained Mr. Petron to review and analyze financial records and Medicare claims data and prepare summary exhibits.[3] Mr. Petron testified that from January 2, 2009, through to January 7, 2018, Merida billed Medicare for over $152 million of claims, and received over $124 million in payments for those claims.[4] Mr. Petron created Trial Exhibit H-9, shown below, to summarize his analysis of the Medicare claims.[5]

**Medicare Billed and Paid Amounts for Merida Group Entities – By Provider**

| Provider Name | Date Range | Number of Beneficiaries | Number of Claims | Billed | Paid |
|---|---|---|---|---|---|
| Bee Caring Hospice | 04/04/2014 - 04/30/2017 | 672 | 4,992 | $ 27,175,220 | $ 17,975,325 |
| Bee Caring Hospice Healthcare | 10/27/2011 - 01/07/2018 | 910 | 6,442 | 34,172,463 | 22,742,741 |
| BRM Home Health PLLC | 01/01/2009 - 01/07/2018 | 3,091 | 15,600 | 32,186,482 | 31,691,258 |
| Excellent Homecare | 10/10/2014 - 12/31/2017 | 168 | 843 | 3,946,156 | 2,796,416 |
| Illumina Hospice | 09/10/2014 - 01/02/2018 | 218 | 1,390 | 6,991,944 | 4,697,505 |
| Outreach Health Services of San Antonio/Merida Health Care Group of San Antonio | 01/02/2009 - 01/06/2018 | 2,772 | 8,484 | 17,569,203 | 17,574,285 |
| Professional Hospice Care Inc. | 01/01/2009 - 02/18/2017 | 686 | 4,250 | 19,314,933 | 14,751,502 |
| Virtue Home Health Inc. | 01/02/2009 - 01/03/2018 | 879 | 3,181 | 6,120,614 | 5,896,888 |
| Well Care Home Health Inc. | 01/02/2009 - 12/29/2017 | 693 | 2,028 | 5,254,005 | 6,087,610 |
| Total | 01/01/2009 - 01/07/2018 | 9,339 | 47,210 | $ 152,731,019 | $ 124,213,530 |

Source: GX A20 to A28

GOVERNMENT EXHIBIT H9 1:18-CR-008

H9-0001

---

[2] Exhibit 2: Excerpt Petron Testimony Day 9: Case 1:18-cr-00008
[3] Exhibit 2: 3:9, 4:2-3, 5:12-25, 7:5-21.
[4] Exhibit 2: 10:14-11:6.
[5] Exhibit 2: 42:1, 43:10-11, 43:16-17

20. Mr. Petron further testified that Medicare paid $1.3 million for claims under Dr. Eduardo Carrillo's ("Dr. Carrillo") Medicare provider number, and $13 million for claims under Dr. Jesus Alfredo Virlar Cadena's ("Dr. Virlar") Medicare provider number.[6] Mr. Petron created Trial Exhibits H-10 and H-12, shown below, showing his analysis of the Medicare claims paid by Medicare under Dr. Carrillo and Dr. Virlar's provider numbers.[7]



Based on the sworn trial testimony of Mr. Petron, there is no genuine dispute that Medicare paid more than $14 million for claims submitted under the provider numbers of Dr. Carrillo and Dr. Virlar during McInnis's participation in the health care fraud conspiracy.

21. The United States submits the trial testimony of Dr. Carrillo and Dr. Virlar in support of its claim for treble damages and civil penalties.[8] Dr. Carrillo and Dr. Virlar both testified at McInnis's criminal trial. Dr. Carrillo testified that he committed fraud while a Medical Director for Merida and that he participated in that fraud with McInnis.[9] Dr. Carrillo testified that 80% of

---

[6] Exhibit 2: 18:2-7, 18:16-20
[7] Exhibit 2: 18:2-7, 18:16-20
[8] Exhibits 3: Excerpt Carrillo Testimony, Day 3, and Exhibit 4: Virlar Testimony, Day 7: Case 1:18-cr-00008
[9] Exhibit 3: 186:5, 193:15-198:13, 210:1-12

8

the patients that he saw did not qualify for Medicare hospice services, that he signed false home health orders, that none of the information in the Merida medical records was truthful, and that there was false patient information in "pretty much every single patient" file.[10] Similarly, Dr. Virlar testified that while a Medical Director for Merida, he agreed to engage in health care fraud with McInnis.[11] Dr. Virlar testified that he received kickbacks from Mesquias and McInnis and that he followed their direction to sign patients up for hospice and home health services when the patients did not qualify for those services.[12] On defense cross-examination, Dr. Virlar stated that "the overall majority," "90%" of Merida claims were fraudulent and that everybody, including nursing staff, marketers, chaplain, and medical directors were making things up.[13] Based on the sworn testimony of Dr. Carrillo and Dr. Virlar, there is no genuine dispute that at least 80% of the Medicare claims submitted under their provider numbers during McInnis's participation in the health care fraud conspiracy were false and fraudulent.

22. The United States submits the affidavit of DOJ Civil Fraud Data Analyst, Robbie Williamson in support of its claim for treble damages and civil penalties.[14] Ms. Williamson, an experienced fraud investigator, auditor, and data analyst, performed her own analysis of the Merida Medicare claims data to calculate single FCA damages, treble damages, and the applicable monetary penalties. To determine the single FCA damages, Ms. Williamson obtained the Merida Medicare claims data and identified $14,551,187 as the total amount paid by Medicare under the provider numbers of Dr. Carrillo and Dr. Virlar for hospice and home health services. Based on Dr. Carrillo and Dr. Virlar's testimony that 80% - 90% of the Merida patients did not need hospice and

---

[10] Exhibit 3: 228:22-229:9, 233:14-234:16, 240:19-241:1
[11] Exhibit 4: 3:10, 4:1, 4:21-24, 12:2-4, 12:23-13:12, 14:4-9
[12] Exhibit 4: 20:21-22:3, 22:11-18, 23:2-7
[13] Exhibit 4: 155:1-12, 155:23-156:14, 171:23-24
[14] Exhibit 5: Affidavit of DOJ Civil Fraud Data Analyst

home health services, Ms. Williamson removed from the United States FCA damage model all hospice claims for less than 90 days of service, and then reduced the remaining total by an additional 20% to arrive at single FCA damages of $9,875,803 for 3,463 individual claims. The $9,875,803 is a conservative subset of Judge Olvera's Medicare loss finding of $120,000,000, and more than 30% less than the total $14,551,187 paid by Medicare under Dr. Carrillo and Dr. Virlar's provider numbers. Consequently, based on the admissions of Dr. Carrillo and Dr. Virlar, and Ms. Williamson's calculations, there is no genuine dispute that Medicare sustained a loss of less than $9,875,803, for the false and fraudulent claims paid under Dr. Carrillo and Dr. Virlar's provider numbers during McInnis's participation in the conspiracy. Further, there is no genuine dispute about the United States entitlement to treble damages of $29,627,410, and civil penalties for the 3,463 claims underlying its single damage calculation. *See* 31 U.S.C. § 3729(a)(1)

23. The United States anticipates that McInnis may argue that because Judge Olvera did not order him to pay the restitution at his criminal sentencing, he is not liable to the United States for FCA damages. There is no basis for this argument in the law or fact. There is no genuine dispute about McInnis's participation in the Merida health care fraud conspiracy. A jury found McInnis guilty beyond a reasonable doubt of conspiracy to commit health care fraud and health care fraud and this Court found McInnis liable for conspiracy to violate the FCA. The Fifth Circuit described McInnis as one of the individuals who orchestrated the fraud scheme, as an "enforcer" of the fraudulent conduct, and as being "intimately involved with the fraud." *Mesquias,* 29 F.4th at 280. Consequently, there is no genuine dispute about McInnis' participation in the conspiracy and his liability to the United States for FCA damages and civil penalties.

24. As of January 30, 2023, the minimum and maximum FCA civil penalty range has increased. In the interests of justice and fairness, the United States respectfully requests that the

10

Court use its discretion to assess the same maximum civil penalty against McInnis that the Court previously assessed against Mesquias a sum of $83,840,000, and not the new maximum penalty range. (ECF No. 39). Finally, there is no genuine dispute about whether that the maximum civil penalty is appropriate in this case. The maximum penalty is appropriate because of the scope of the fraud, and because the Defendants' scheme cruelly affected patients and their families, not just the American taxpayers, targeting the poor and elderly, non-English speakers, and causing suffering and psychological harm to patients for their own financial gain. *Mesquias,* 29 F.4th at 280-281.

## CONCLUSION

25.     There are no genuine issues of material fact regarding the United States entitlement to FCA damages and civil penalties in this case. The Court has already found McInnis liable to the United States for its FCA causes of action, including conspiracy to violate the FCA. The United States evidence, including the Fifth Circuit opinion affirming McInnis's conviction and sentence, the sworn testimony of Mr. Petron, Dr. Carrillo and Dr. Virlar, and the affidavit of a DOJ Fraud analyst support a finding that there is no genuine dispute that Medicare sustained a single damage loss of $9,875,803, for false and fraudulent claims submitted under Dr. Carrillo and Dr. Virlar's provider numbers during McInnis's participation in the health care fraud conspiracy.

26.     When there are no genuine issues of material fact, summary judgment is appropriate as a matter of law; therefore, after review and consideration of this motion, the United States evidence, the applicable statutes, and the controlling case law, the United States respectfully requests the Court find there is no genuine dispute regarding the United States single FCA damages, and grant summary judgment in favor of the United States and order McInnis to pay the United States treble single damages of $29,627,410, and civil penalties of $83,840,000, for a total of $113,467,410.

Date:  February 16, 2023.

                                         Respectfully submitted,

                                         ALAMDAR S. HAMDANI,
                                         United States Attorney

                                         By:*/s/ Julie Redlinger*
                                         Julie Redlinger
                                         Assistant United States Attorney
                                         SDTX: 873627, SBN: 24049160
                                         1000 Louisiana, Suite 2300
                                         Houston, Texas 77002
                                         Telephone: (713) 567-9779
                                         Facsimile: (713) 718-3303
                                         Email: julie.redlinger@usdoj.gov

                                         *Attorney in charge for the United States*

## CERTIFICATE OF SERVICE

     I hereby certify that on February 16, 2023, this Motion for Summary Judgment on FCA Damages was electronically submitted to the clerk of the U.S. District Court for the Southern District of Texas via the Court's CM/ECF system and a copy served via email to counsel for Defendant Henry W. McInnis as follows:

Cooke Kelsy
700 Louisiana Street, Suite 7200
Houston, Texas 2700
Telephone: 713-659-7200
Facsimile: 713-659-7203
cooke@ParkerSanchez.com

                                         */s/ Julie Redlinger*
                                         Julie Redlinger
                                         Assistant United States Attorney